UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

BERLE A. CULLUM,

                Petitioner,

vs.

JUDGE JOSEPH W. BORTON,
PROSECUTING ATTORNEY,
IDAHO PAROLE COMMISSION,

                Respondents.

Case No. 1:26-cv-00258-DKG

**INITIAL REVIEW ORDER
AND REASSIGNMENT ORDER**

Petitioner Berle A. Cullum filed a Petition for Writ of Habeas Corpus under 28 U.S.C. § 2241, challenging a pending state court criminal proceeding and a parole denial. Dkt. 2. Because it appears that this case is subject to dismissal and not all named parties have consented to the jurisdiction of a United States Magistrate Judge to enter final orders, the Court will order the Clerk to reassign this case to a United States District Judge to determine whether to summarily dismiss this case.

## REVIEW OF PETITION

In its discretion, the Court may apply the Rules Governing Section 2254 Cases ("Habeas Rules") to habeas petitions filed pursuant to § 2241. *See* Habeas Rule 1(b). The Court finds it appropriate to do so here. Habeas Rule 4 permits dismissal of a petition if

**INITIAL REVIEW ORDER AND REASSIGNMENT ORDER  - 1**

"it plainly appears from the face of the petition and any attached exhibits that the petitioner is not entitled to relief in the district court."

## 1. Background

Petitioner began serving a five-to-twenty-year state sentence for drug trafficking after being convicted in 2020. In 2021, Petitioner was investigated for two lewd and lascivious conduct ("L&L") charges involving his granddaughters from alleged incidents occurring between 2015 and 2018. Ada County prosecutors filed a criminal action against Petitioner in 2021 in Case No. CR01-21-37390. They did not inform Petitioner of the charges or serve him with a warrant. His pre-parole hearing on the drug trafficking sentence was held on July 31, 2024. He was first notified of the pending charges at that time.

On September 13, 2024, Petitioner attempted to assert his speedy trial rights in a pro se motion to dismiss.[1] On September 17, 2024, the presiding judge appointed a public defender for Petitioner. The public defender did not brief the motion or ask for oral argument. When Petitioner wrote to the trial court to check on the status of the motion, he was notified that he must contact his public defender. The case proceeded, and the motion was left unadjudicated. Petitioner later waived his *statutory* speedy trial rights to allow his attorney time to prepare for trial, but he did not waive his *constitutional* speedy trial rights.

---

[1] *See* https://preview.icourt.idaho.gov/case/CR01-21-37390/county/Ada (accessed 6/2/2026).

**INITIAL REVIEW ORDER AND REASSIGNMENT ORDER  - 2**

Almost a year later, on September 25, 2025, the public defender filed a memorandum in support of Petitioner's 2024 motion to dismiss for a violation of his speedy trial rights. The public defender acknowledged that he had focused on the statutory speedy trial rights and overlooked the constitutional grounds asserted initially by Petitioner. *See* Exhibit, State Court Order, at 7.

On November 14, 2025, the Court denied the motion to dismiss. It appears that Petitioner filed a pro se interlocutory appeal in the case that was not heard (likely because he was represented by counsel). The case is scheduled for trial in July 2026.

Petitioner's parole was denied after the new charges were filed. He asserts that prosecutors purposely waited until he was parole eligible to pursue the criminal complaint and that the state trial judge, investigators, prosecutors, and defense attorneys conspired together to deny Petitioner his speedy trial rights. He asserts, without supporting facts, that the judge intimidated the public defenders into not pursuing the speedy trial motion.

## 2. Exhaustion Requirement

Section 2241 gives federal courts jurisdiction to issue pretrial writs of habeas corpus to state criminal defendants in appropriate cases. *Braden v. 30th Judicial Circuit Court of Kentucky*, 410 U.S. 484, 489–93 (1973). A pre-requisite to bringing a federal habeas corpus petition under 28 U.S.C. § 2241 is exhausting one's federal claims in state court. *Carden v. Montana*, 626 F.2d 82, 83 (9th Cir. 1980). The exhaustion requirement "serves two purposes: (1) to avoid isolating state courts from federal constitutional issues

**INITIAL REVIEW ORDER AND REASSIGNMENT ORDER  - 3**

by assuring those courts an ample opportunity to consider constitutional claims; and (2) to prevent federal interference with state adjudication, especially state criminal trials." *Id*.

The exhaustion doctrine requires that a habeas petitioner give the state courts, through the designated appellate process, "a full and fair opportunity to resolve federal constitutional claims" before bringing those claims to federal court. *See O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999) (§ 2254 context). To do so, the petitioner must invoke one complete round of the state's established appellate review process. *Id*. If the petitioner is not granted relief, he may file a petition for a writ of habeas corpus in federal court.

The federal courts are not permitted to "supervise the administration of state criminal proceedings at every interlocutory stage." *New York ex rel. Epps v. Nenna*, 214 F. Supp. 102, 105 (S.D.N.Y. 1963). If they were, such supervision "would erase the exhaustion principle from among the canons of habeas corpus adjudication." *Id*. Although alleged constitutional violations are of utmost concern to the federal district courts, the state courts must be given the first opportunity to correct constitutional violations, so as to preserve the principles of comity and federalism. If a defendant is seeking to "derail a pending state criminal proceeding, and … may be acquitted at trial," it is appropriate for a federal district court to postpone adjudication of the petitioner's constitutional claims "until a time when federal jurisdiction will not seriously disrupt

**INITIAL REVIEW ORDER AND REASSIGNMENT ORDER  - 4**

state judicial processes." *Neville v. Cavanagh*, 611 F.2d 673, 676 (7th Cir. 1979) (internal quotation marks omitted).

The exhaustion requirement has a very limited exception with respect to pretrial habeas petitions. A federal district court may issue a pretrial writ under § 2241 without a showing of exhaustion of state remedies "only in the most unusual circumstances"—that is, if a petitioner can show "special circumstances" that particularly warrant federal intervention. *Id*. at 83-84 (internal quotation marks omitted). For example, special circumstances include "cases of proven harassment or prosecutions undertaken by state officials in bad faith without hope of obtaining a valid conviction," or cases "where irreparable injury can be shown." *Perez v. Ledesma*, 401 U.S. 82, 85 (1971).

The special circumstances exception is rarely applied. In *Whelan v. Noelle*, 966 F.Supp. 992, 998 (D. Or. 1997), the federal district court found that special circumstances did not exist. The court recognized it was unfortunate several months would pass before the petitioner's state court appeal was completed, but concluded that the petitioner was not excused from exhaustion where he "made no showing that the state appellate process is not sufficient to adjudicate his claims." *Id*. at 999.

On the other hand, in *Cohen v. Warden, Montgomery County Detention Center*, 252 F.Supp. 666 (D. Md. 1966), the court deemed the petitioner's state court remedies exhausted where his appeal had been dismissed by the highest state court because of the petitioner's financial inability to file the required briefs in his state habeas corpus proceeding. *Id*. at 672.

**INITIAL REVIEW ORDER AND REASSIGNMENT ORDER  - 5**

Petitioner asserts that the face of the Petition provides grounds for the Court to find that special circumstances exist to excuse his failure to exhaust state court remedies. The state court record, however, contains additional facts controverting the allegations in the Petition. While prosecutors gave no reason for the significant delay between the filing of the complaint and service of the complaint other than complications due to Petitioner's incarceration, *see* Exhibit at 6, nothing in the record suggests that the court, investigators, or public defenders had anything to do with the delay in prosecution.

The record shows that the trial court assigned a public defender to represent Petitioner four days after he filed the speedy trial motion. The public defender admitted that the failure to pursue the speedy trial motion any sooner was due to his focus on another aspect of Petitioner's speedy trial rights. Nothing in the record shows the judge intimidated the public defender into not pursuing the motion. The state trial court also found that there was insufficient evidence in the record to show that Petitioner was denied parole solely because of the new charges. *Id*. at 8.

The Idaho Health and Welfare Department investigation records and the Boise Police Department investigation records include summaries of interviews with Petitioner's granddaughters and son (the granddaughters' father). Probable cause for the L&L charges is found in these reports. Petitioner has not shown that the case is one of mere harassment or that prosecutors undertook it in bad faith without hope of obtaining a valid conviction. Nor has Petitioner shown that irreparable injury will occur if the state

**INITIAL REVIEW ORDER AND REASSIGNMENT ORDER  - 6**

court continues to adjudicate the case to a conclusion in July 2026, instead of attempting to pursue a § 2241 petition in federal court.

For all of these reasons, Petitioner has not shown special circumstances exist.

### 3. Speedy Trial Claims Should be Decided in State Criminal Cases

Petitioner has not shown that the state court's denial of his speedy trial claim should be heard in federal court rather than in the state appellate courts. Under the Sixth Amendment of the U.S. Constitution and Article I, Section 13 of the Idaho Constitution, the right to a speedy trial protects individuals from unresolved lingering charges. In *Smith v. Hooey*, 393 U.S. 374, 377 (1969), the United States Supreme Court ruled that when a state has pending criminal charges against an incarcerated person, the state has a constitutional duty to make a diligent, good-faith effort to bring that prisoner to trial. Letting a felony warrant sit completely idle without taking action to serve and pursue the case may be grounds for an assertion that the good-faith requirement has been violated.

However, the United States Supreme Court did not address how courts are to effectuate the *Smith v. Hooey* holding. In *Lawrence v. Blackwell*, 298 F. Supp. 708 (N.D. Ga. 1969), the federal district court reasoned:

> Despite the uncertainty created by the Supreme Court's opinion, we hold that the plaintiffs have the following remedies to effectuate their right to a speedy trial: The state defendants are under a constitutional obligation to make a diligent, good-faith effort to try the plaintiffs within a reasonable time. Defendants will not automatically lose the right to bring the plaintiffs to trial, if they act within a reasonable time, but at their trials, the plaintiffs may raise their prior denial of a speedy trial. It will be for the state trial courts to decide what the plaintiffs must show to merit

**INITIAL REVIEW ORDER AND REASSIGNMENT ORDER  - 7**

dismissal of their indictment. If the defendants do not make the effort required by *Smith v. Hooey* to bring the plaintiffs to trial, appropriate courts in the states may grant either post-conviction relief, following belated convictions, or pre-conviction relief, after the states have permitted a reasonable time to elapse without movement toward trial. Considerations of federalism and lack of jurisdiction over the state defendants preclude recourse to this court for either pre- or post-conviction relief. Moreover, this court does not conceive that under *Smith v. Hooey* it can now either dismiss the state indictments or hold an independent hearing on the possible prejudice arising from the delays in trial.

*Id*. at 715-16 (footnotes omitted).

The speedy trial question already has been adjudicated in Petitioner's case, with the state trial court taking into consideration the course of the criminal proceeding from the unique perspective of presiding over the case. In due course, the question will be heard by the Idaho appellate courts if Petitioner is convicted at trial. At that time, Petitioner can raise issues such as whether the motion should have been granted because the prosecutors had no excuse for not serving the complaint upon Petitioner in 2021, and whether Petitioner's pro se motion for dismissal that was filed prior to appointment of counsel should have been adjudicated regardless of whether the public defender filed anything further in support of it. Idaho has its own pro se litigant rules and its state appellate courts are in the best position to interpret and apply those rules. Nothing in the record shows that the federal court should interfere with completion of the adjudication of this issue.

**INITIAL REVIEW ORDER AND REASSIGNMENT ORDER  - 8**

### 4. No Right to Parole

The Due Process Clause of the Fourteenth Amendment prohibits state action that deprives a person of life, liberty, or property without due process of law, but a person cannot bring a due process claim unless he demonstrates that he was deprived of one of these protected interests. *Kentucky Dep't of Corr. v. Thompson*, 490 U.S. 454, 459-60 (1989). There is "no right under the Federal Constitution to be conditionally released before the expiration of a valid sentence, and the States are under no duty to offer parole to their prisoners." *Swarthout v. Cooke,* 562 U.S. 216, 220 (2011); *Board of Pardons v. Allen*, 482 U.S. 369, 380-81 (1987). Therefore, an inmate can bring a procedural due process challenge to a parole denial decision only when there is a *state-created* liberty interest in parole. *Swarthout*, 562 U.S. at 220.

Federal courts are required to look to decisions of the highest state court to determine whether there is a state-created liberty interest in parole arising from state statutes. *Sass v. California Board of Prison Terms*, 461 F.3d 1123, 1127 (9th Cir. 2006) ("a State's highest court is the final judicial arbiter of the meaning of state statutes").[2] In *Banks v. State of Idaho*, 920 P.2d 905 (Idaho 1996), the Idaho Supreme Court addressed the liberty interest question. The court relied on the Idaho sentencing statute, I.C. § 19-

---

[2] *Sass* was overruled on other grounds by *Hayward v. Marshall*, 603 F.3d. 546 (9th Cir. 2010) (en banc) (any right to release on parole arose from state law, and did not arise from federal constitution), which itself was overruled by implication in *Swarthout v. Cooke*, 562 U.S. 216, 221 (2011) ("No opinion of ours supports converting California's 'some evidence' rule into a substantive federal requirement. The liberty interest at issue here is the interest in receiving parole when the California standards for parole have been met, and the minimum procedures adequate for due-process protection of that interest are those set forth in *Greenholtz* [*v. Inmates of Neb. Penal and Correctional Complex*, 442 U.S. 1, 12 (1979).]").

**INITIAL REVIEW ORDER AND REASSIGNMENT ORDER  - 9**

2513, which uses the nonmandatory words "[t]he offender may be considered for parole or discharge at any time during the indeterminate period of the sentence." The *Banks* Court held that, as a result of the statute's language, in Idaho "parole is not an automatic right or liberty interest." *Id*. at 908.

The *Banks* Court acknowledged the existence of I.C. § 20-223, which governs parole commission decisions and contains the phrase "a parole *shall* be ordered when" (emphasis added). However, the court did not find the statute's "shall" language controlling in the liberty interest analysis. Rather, the Idaho Supreme Court relied on I.C. § 19-2513, which governs sentencing. Idaho Code § 19-2513 does not contain mandatory language, but it instead states that "[t]he offender *may* be considered for parole or discharged at any time during the indeterminate part of the sentence."

The *Banks* decision forecloses Idaho prisoners' ability to bring a due process claim in a federal court. Therefore, Petitioner cannot argue that he is being kept incarcerated without due process of law as a result of wrongful denial of parole, or that state actors denied him the "right" to parole on his drug trafficking sentence.

In addition, the United States Constitution does not prohibit a parole commission from reviewing pending charges to help determine whether to release a prisoner into the community. *See, e.g., Vargas v. United States Parole Com'n*, 865 F.2d 191, 195 (9th Cir. 1988) (unadjudicated allegations of criminal behavior may be considered in parole decisions). An Idaho parole hearing "is not governed by the Idaho Rules of Evidence or the constitutional protections afforded criminal defendants at trial," and the Parole

**INITIAL REVIEW ORDER AND REASSIGNMENT ORDER  - 10**

Commission "was free to attach whatever significance it chose to" when reviewing evidentiary submissions. *Osborn v. Butler*, 712 F. Supp. 2d 1134, 1155 (D. Idaho 2010), citing *Dopp v. Idaho Commission of Pardons and Parole*, 84 P.3d 593, 598 (Idaho Ct. App. 2004).

Petitioner also errs in asserting that the prosecutor can use the parole denial as evidence of guilt in the L&L trial. *See United States v. Mendoza–Lopez,* 481 U.S. 828, 834 n.7 (1987) (holding that a criminal trial does not allow the use of an administrative determination as conclusive evidence of a fact in a criminal prosecution"), *superseded by statute on other grounds as stated in United States v. Palomar-Santiago,* 593 U.S. 321, 327 n. 2 (2021).

For all of these reasons, the alleged denial-of-parole consequences of the pending charges are not adequate grounds for the federal court to interfere with a pending state criminal action.

### 5. Abstention is Appropriate

Federal courts employ the doctrine of abstention when they decide to refrain from hearing claims pending in state court based on "regard for the rightful independence of the state governments and for the smooth working of the federal judiciary." *R.R. Comm'n of Tex. v. Pullman Co.*, 312 U.S. 496, 501 (1941) (citations and punctuation omitted). Under *Younger v. Harris*, 401 U.S. 37 (1971), federal abstention from interference in state criminal proceedings is warranted when "(1) there is an ongoing state judicial proceeding; (2) the proceeding implicates important state interests; (3) there is an

**INITIAL REVIEW ORDER AND REASSIGNMENT ORDER  - 11**

adequate opportunity in the state proceedings to raise constitutional challenges; and (4) the requested relief seeks to enjoin or has the practical effect of enjoining the ongoing state judicial proceeding." *Arevalo v. Hennessy*, 882 F.3d 763, 765 (9th Cir. 2018) (internal punctuation and citation omitted).

Three exceptions to *Younger* abstention exist: (1) if the petitioner shows prosecutorial bad faith or harassment, *see Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800, 816 (1976) (citing *Younger*, 410 U.S. at 53-54); (2) if he is being prosecuted under a patently invalid state statute, *id*.; or (3) if there is "some other extraordinary circumstance that would make abstention inappropriate," *Arevalo*, 882 F.3d at 766 (citation omitted).

Here, it appears that abstaining from hearing Petitioner's pending state criminal case is appropriate. *Younger* itself was a criminal case, and enforcement of state criminal laws is of great importance to the states. This case also involves the manner in which Idaho courts handle pro se filings in a criminal case, also governed by state procedures. Nothing in the record shows that the alleged federal constitutional violations cannot be remedied in due course in state court. A future appeal is considered an "adequate opportunity" for a petitioner to raise the requested relief. *Kugler v. Helfant*, 421 U.S. 117, 124 (1975).

If the federal District Court heard this case, it would enjoin or halt the upcoming state court trial, and the Court would have to reconsider the speedy trial issue already decided by the state district court, rather than permit it to proceed to the state appellate

**INITIAL REVIEW ORDER AND REASSIGNMENT ORDER - 12**

courts. Petitioner will be given an opportunity to show why abstention is not appropriate in this case.

### 6. Improper Respondents

Habeas corpus, translated from Latin, means "produce the body." *Brittingham v. United States*, 982 F.2d 378, 379 (9th Cir. 1992). Thus, a jurisdictional requirement for habeas corpus actions is the naming of a proper respondent—one who has the power to produce the petitioner if a writ issues. In a circumstance where the petitioner is in custody, the proper respondent is usually the warden or sheriff of the facility where the petitioner is incarcerated. *See Ortiz-Sandoval v. Gomez*, 81 F.3d 891, 894 (9th Cir. 1996). Petitioner must file a notice of substitution of respondent, name his current custodian, and remove the other named respondents.

### 7. Conclusion

A preliminary review of Petitioner's filings shows that he is not entitled to proceed in federal court for the foregoing reasons. Chiefly, he has not exhausted his state court remedies, and the federal court usually does not interfere with state criminal proceedings under the abstention doctrine. The Court will permit Petitioner to respond to provide further information and argument for the District Court's review. Respondent is not required to respond to the Petition unless a court order to do so is entered.

**INITIAL REVIEW ORDER AND REASSIGNMENT ORDER  - 13**

## ORDER

**IT IS ORDERED:**

1. Within **21 days** after entry of this Order, Petitioner must file a notice of substitution of respondent, name his current custodian, and remove the other named respondents.

2. Within **21 days** after entry of this Order, Petitioner may provide further information and argument for the Court's review, addressing the deficiencies and issues set forth above. He may file a response of no more than 20 pages to this Order.

3. Petitioner's Motion to Take Judicial Notice re Filing Fee Delay (Dkt. 5) as an indication of State interference in his case is DENIED as an inappropriate subject for judicial notice. The fee has been received.

4. Petitioner's Motion for Appointment of a Federal Defender (Dkt. 5) is DENIED.

5. The Clerk of Court shall reassign this case to a United States District Judge.

DATED: June 3, 2026

Honorable Debora K. Grasham
United States Magistrate Judge

**INITIAL REVIEW ORDER AND REASSIGNMENT ORDER  - 14**